# A. L. WEST, Appellant, v. MARY F. BURKE et al.

Division One, March 5, 1921.

1. **GRADING: Benefits: Legislative Question.** Whether land is bene-
fited by the grading of an adjacent street so as to be liable for the
cost of such grading is a legislative and not a judicial question;
and the legislative determination is conclusive except in excep-
tional cases.

2. ————: **Kansas City Charter: Benefit District: Blocks.** By Article
8 of Kansas City Charter (1908) the cost of grading a street or
avenue is to be charged on the abutting land "from the line of
the street, avenue or public highway back to the center line of
the block or blocks" if such land is "laid off in lots or blocks"
and if not, then "back one hundred and fifty feet" from the street
or avenue. *Held*, that if charging the property "back to the center
line of the block" results, on one side of the street, in a benefit
district 28 feet wider than on the other side, that is not such a
gross inequality as to render the tax bill void within the rule an-
nounced in Commerce Trust Co. v. Blakely, 274 Mo. 52.

3. ————: ————: ————: **Dimensions of Blocks in Neighborhood.** In
determining whether land on a street is "laid off in lots or blocks"
within the meaning of Kansas City Charter for the purpose of as-
sessing the cost of grading such street, the similar dimensions of
blocks in platted lands in the neighborhood may be considered;
and the assessment is not to be condemned because the average
block in many other parts of the city is materially narrower than
the parcel in suit.

4. ————: ————: ————: **Intention of Platter.** Whether the owner
of land who plats it into a subdivision of parcels designated
"blocks" intended them to be "city blocks" is not material, if in
assessing them as "blocks" for the cost of grading an abutting
street the resulting assessment is not grossly unequal, arbitrary
and disproportionate.

5. ————: ————: **Benefit Districts.** By Article 7 of the Kansas City
Charter (1908) the council may provide by ordinance for grading
public highways and in such ordinance must define a district
within which property is to be assessed in proportion to benefits
to pay damages to such property as may be damaged by such
grading, such assessment to be made in a court proceeding. By
Article 8 the cost of such grading is to be assessed, in proportion
to the value of such assessed property, on property in a district

West v. Burke.

defined by the charter itself. In this case the benefit district defined by the council under Article 7 embraced less of defendant's land than the tax bill issued under Article 8 for part of the cost of grading, but this fact did not render such tax bill invalid.

6. ——: ——: **Apportionment: Value.** Apportioning the cost of grading public highways on the abutting land in proportion to its value exclusive of improvements, as provided by Article 8 of Kansas City Charter, is valid, unless in a particular case it results in a flagrant abuse of the taxing power of an arbitrary character, causing confiscation of the property.

7. ——: ——: ——: **Disproportionate Assessments.** The fact that in this case the application of the charter rule resulted in an assessment of defendant's land about twice as great as that of a neighboring parcel of about the same size is not such conclusive proof of an abuse of the taxing power as of itself to show confiscation requiring an affirmance of the judgment in defendant's favor regardless of other errors; but the existence of such an arbitrary exaction is a question of fact to be determined in the trial court on evidence clearly bringing it within the rule stated.

8. ——: ——: **Notice.** The failure to give such a notice of the proceedings to assess damages and benefits in a grading case as is required under Kansas City Charter, Article 7, in no way affects the validity of the assessment to pay for the cost of doing the work of grading as provided in Article 8. No notice is required prior to such latter assessment by either the State or Federal Constitution.

9. **MOTIONS: Bills of Exceptions: Term: Final.** Where the record proper fails to show the filing of a term bill of exceptions on the trial court's action on a motion to dismiss for want of prosecution and such motion and the ruling thereon do not appear in the final bill of exceptions, the Supreme Court has no power to affirm the judgment because of the ruling on such motion.

Appeal from Jackson Circuit Court.—*Hon. O. A. Lucas,* Judge.

REVERSED AND REMANDED.

*Clarence S. Palmer* for appellant.

(1) The court erred in giving declaration of law No. 4 at the request of defendants. Under the charter the only basis of apportionment of cost is according to

valuation. Sec. 3, art. 8, p. 315, Charter; Meier v. St. Louis, 180 Mo. 408; Webster v. Fargo, 181 U. S. 394; Prior v. Const. Co., 170 Mo. 451; Ry. Co. v. Paving Co., 197 U. S. 430; Cooper v. Ord, 60 Mo. 420; Fairbanks-Morse Co. v. Stock Food Co., 151 Mo. 260. (2) The court erred in admitting evidence of the supposed special benefits. The only material inquiry was as to the valuation. Same authorities as one. (3) Land "laid off in a lot or block" is land so laid off. Preston v. Roberts, 12 Bush (Ky.) 570; Sec. 3, art 8, p. 315, Charter; Crane v. French, 50 Mo. App. 367; Gast Realty Co. v. Granite Co., 240 U. S. 55; Withnell v. Const. Co., 39 Sup. Ct. Rep. 200. (4) Even if the court should conclude that the land of defendants was not laid off in lots or blocks, the defendants should have shown how much they were injured by the acts of the city. Neil v. Ridge, 220 Mo. 233; City of Washington v. Stumpe, 197 S. W. 165. (5) The taxing district is fixed by the charter and cannot be changed by ordinance. Collier v. Paving & Const. Co., 180 Mo. 375. (6) The suit was not abated by failure to take out *alias* summons or order of publication. South Mo. Lumber Co. v. Wright, 114 Mo. 326; McGrath v. Ry. Co., 128 Mo. 1; State v. Wilson, 216 Mo. 291; R. S. 1909, sec. 1770; Priddy v. Mackenzie, 205 Mo. 200; State ex rel. v. Job, 205 Mo. 26. (7) At the time the tax-bills were issued, Block 5, Subdivision of Thomas J. Hughes' land was not of unusual length east and west in that part of Kansas City. Considering it as laid off into blocks, made the taxing district approximately equal on each side of the street grading, and the action of the city was valid. (8) The argument regarding the effect of ordinance 8374 is based upon an entire misunderstanding of the provisions of the charter. The only ordinance required for doing the work and assessing the cost was ordinance 9643. This was passed after the bids were received. (9) "Where there is legislative determination of the benefit district and of the basis of apportionment, there is no need of notice." Naylor v. Harrisonville, 207 Mo. 341.

*Charles R. Pence* for respondents.

(1)   Under the Charter of Kansas City, the Board of Public Works, has no authority to fix or prescribe a benefit district in special assessment proceedings, but even if it has, it must comply with the provisions and limitations of the charter; and so it could not lawfully assess defendants' entire tract of land for the street grading, but could only assess the west 150 feet thereof; that is, their "land on the line of the street, avenue, or public highway or part thereof grading, back one hundred and fifty feet," for the reason that the ground was unplatted and not divided into lots or blocks within the meaning of the charter. Charter, art. 8, sec. 3, p. 315; Commerce Trust Co. v. Blakely, 274 Mo. 52; Granite Co. v. Realty Co., 259 Mo. 164, 172; Collier Estate v. West Pav. Co., 180 Mo. 385; McGrew v. City of Kansas, 64 Kan. 61, 67 Pac. 438; Bowles v. Iola, 82 Kan. 474; Dameshel v. Shanks, 30 S. W. (Ky.) 564; Caldwell v. Rupert, 73 Ky. 179; Barber Asphalt Co. v. Watt, 51 La. Ann. 1345; Seviers & Sons Co. v. Spokane, 77 Wash. 282; Gast Realty Co. v. Schneider, 240 U. S. 55. (2)   The failure of the Board of Public Works to assess the cost of the work in accordance with the ordinance fixing the benefit district rendered the tax bill illegal and void. (a)   The levying and assessment of a special tax is a legislative act or function, and by the Charter that power is vested solely in the Common Council. Art. 3, sec. 1, par. 3, pp. 119, 124, Charter.   (b)   The fixing of a benefit district is a most important and essential step in the levying of a special tax. And that it must be prescribed, that is, fixed and determined, before the burden is imposed, so that notice may be given to the property owners interested, is a fundamental rule. Hamliton on Assessments, sec. 56.   (c)   The fixing of the benefit or taxing district is just as important to the taxpayers as the character and extent of the improvement proposed to be made. If the board has the power

to change a benefit district fixed by the council, then it has the legislative power to increase or diminish a special tax. That the board has no such power will appear, from the sections of the charter relating to the subject. Art. 3, sec. 1, p. 119; Art. 3, sec. 1, par. 3, p. 124; Art. 7, secs. 1, 2, 3, 5, 13, 14; Art. 8, sec. 3, pp. 310, 311, 312, 313, 314, 315. (d) If the notice of the proceedings under ordinance 8374, the ordinance establishing the benefit district, was legal notice as to these defendants, they were chargeable with knowledge that the proceedings would affect only the west 150 feet of their land, as the benefit district only included that amount. If the Board of Public Works has the right to extend the district to include other property, what notice is afforded the property owners concerned of such proceeding? There is no provision in the charter or in any ordinance for notice of such action. (e) The consequence of appellant's theory, that the Board of Public Works has the right to decide the question of platted or unplatted ground, and thereby fix the benefit district at the time of the apportionment of the cost of the work, and after the work has been done, would be that no property owner could know whether he was to be subject to the tax or to what extent until the tax bill was made out and his property charged with a lien for its payment. The benefit district in such case would not be prescribed, but fixed only after the work was done and the tax had become a charge upon the land. This would not be due process of law. (f) And, finally, it results from appellant's theory that there would be two benefit districts in a single grading proceeding; one fixed by the council for the purpose of assessing the land to pay the damages suffered by property owners from the change of the grade; and another, fixed by the Board of Public Works, after the work was done, to pay the cost of the work of grading. (3) This suit should be abated for the failure of the plaintiff to prosecute it for a year and a half after filing. Pitkin v. Flagg, 198 Mo. 646; Cox v. Strickland, 47 S. E. (Ga.) 917; Roes v. Clark, 63 Atl.

(Pa.) 365; Brunswick v. Bingham, 35 S. E. 772; Branch v. Bank, 50 Ga. 413; Clark v. Keller, 3 Bush (Ky.) 223; Wolfenden v. Berry, 22 N. W. 915; Parsons v. Hill, 15 App. D. C. 532; Hazelhurst v. Morris, 28 Md. 67; Etheridge v. Wordley, 83 N. C. 11. (4) The basis of the assessment, in this case upon the lands charged with the cost of the work, to-wit, the valuation of the property, is not in accordance with, and in proportion to, the benefits conferred by the improvement. The rule or method of apportioning the cost applied by the Board of Public Works, to-wit, by valuation of the property exclusive of improvements, bears no just and lawful relation to the special benefits, and is therefore illegal. 4 Dillon, Mun. Corp. (5 Ed.) sec. 1443; Hamilton on Assessments, secs. 56, 141, and 213; Neenan v. Smith, 50 Mo. 525; Tyler v. St. Louis, 56 Mo. 60; Zallar v. Kellogg, 4 Mo. App. 163; St. Louis v. Allen, 53 Mo. 44; Independence v. Gates, 110 Mo. 374; Asphalt Co. v. Hanesler, 201 Mo. 410; Union Tr. Co. v. Pagensticker, 221 Mo. 128; Buchan v. Broadwell, 88 Mo. 36; State v. Pillsbury, 82 Minn. 359, 85 N. W. 175; State v. Newark, 37 N. J. L. 415; Barnes v. Dyer, 56 Vt. 469; Walsh v. Barron, 61 Ohio St. 15; Hammett v. Philadelphia, 65 Pa. St. 146; In Re Morewood Ave., 159 Pa. St. 20; Dyer v. Farmington, 70 Me. 515; Gast Realty Co. v. Schneider, 240 U. S. 55. (5) No jurisdiction was obtained over the defendants to charge their land as the steps precedent to a proper publication were not taken and defendants had no notice of the assessment or valuation of their property. Hamilton on Assessments, sec. 141; Judson on Taxation (2 Ed.), secs. 417, 418; Stuart v. Palmer, 74 N. Y. 183; Londoner v. Denver, 210 U. S. 373; Art. 7, sec. 5, p. 295, Charter.

JAMES T. BLAIR, P. J.—This is an appeal from a judgment for defendant in a suit on a tax bill issued in part payment of the cost of the work of grading Ewing avenue from Fifteenth to Seventeenth street in Kansas City.

The answer contains (1) an admission of ownership of the parcel of ground against which the tax bill was issued; (2) a general denial of other allegations; (3) averments of facts said to show such delay in prosecuting this action as to establish that it was not commenced or prosecuted in good faith and that the lien has expired; (4) a plea of laches on the same facts; (5) averments that the assessment was void because the parcel assessed was not in the assessment district, and (6) that the assessment and the tax bill are invalid and in violation of designated provisions of the State and Federal constitutions. A reply was filed.

Appellant offered the tax bill. Respondents offered ordinances, orders and publication of notice, certain plats and some oral evidence—all of which appear, so far as necessary, in connection with the discussion of questions to which they are relevant. The case was tried to the court.

I. The trial court gave a declaration of law for respondents, as follows:

"The court declares the law to be that it must consider and regard the evidence offered by the defendants tending to prove that the assessment against Grading the land of defendants shown by the tax Benefits: bill sued on is grossly in excess of any Legislative Question. special benefits resulting to said land from the grading for which said tax bill was issued; and that if the court finds that said assessment is in excess of said special benefits, its finding against defendants cannot exceed the amount of said special benefits."

Appellant assigns this for error. Respondents do not seem to defend this declaration. The instruction is general; whereas, the question whether the parcel "would or would not be benefited" by the improvement "is a legislative and not a judicial question," and the judgment of the legislative department is conclusive unless it be an exceptional case. [Prior v. Construction Co., 170 Mo. l. c. 451; Meier v. St. Louis, 180 Mo. l. c. 408; L. & N. R. R. Co. v. Barber Asphalt Co., 197

U. S. 1. c. 433; Wagner v. Baltimore, 239 U. S. 1. c. 218, et seq.]

II. Respondents contend there are reasons requiring the affirmance of the judgment whether or no instruction 4 was erroneous. The first of these, it is argued, is that the land was unplatted land and legally could not be assessed as platted land, as was done. The charter provides that property along the street or avenue graded if "laid off in lots or blocks . . . from the line of the street, avenue or public highway" shall be charged "back to the center line of the block or blocks;" but if the property is not "laid off into lots or blocks" such property, "back one hundred and fifty feet, shall be so charged."

*Kansas City Charter: Grading Proceedings: Lots or Blocks.*

The part of Ewing avenue graded runs between what appears on the map as "Subdivision of Thomas J. Hughes," lying east of the avenue, and West Manchester Addition, lying on the west of it. West Manchester Addition consists, from north to south, of blocks 1, 2, 3 and 4. These blocks extend westward from Ewing avenue to Bennington avenue, an average of 570.7 feet. From north to south they are of an average width of 272.56 feet. Each of these blocks is divided into twenty-two lots, eleven facing north and eleven facing south. The streets between are fifty feet in width. East of Ewing avenue, between Fifteenth and Seventeenth streets, opposite the addition just described, lies the Hughes Subdivision, consisting of two parcels marked as block 4 and block 5; the latter is that to the north and is owned by respondents. It extends 630.25 feet east along Fifteenth street from Ewing avenue and is 591.23 feet from north to south along that avenue. South of it is a street or road which articulates with the central street of West Manchester Addition. South of this highway lies a parcel approximately equal in size to that of respondents. Winchester avenue runs north and south along the east side of blocks 4 and 5 of

the Hughes Subdivision. Fifteenth street is north of it and Seventeenth street is south. These two last named streets form the north and south boundaries of West Manchester Addition, also. It will appear from this that there is no great discrepancy between the total area of West Manchester Addition and that of the Hughes Subdivision. The benefit district, as assessed, extended from Fifteenth street on the north to Seventeenth street on the south and from Ewing avenue west one-half the distance to Bennington avenue, the next parallel street on the west, an average distance of 287.35 feet; and extended east from Ewing avenue an average distance of 315.18 feet. The varations implied in the word "average" as used here did not exceed three inches and are given no attention by counsel, neither do they deserve any. The blocks in the additions to the north, to the west and to the northwest of the Hughes Subdivision are of about the same general width or length, from east to west, as the parcels in the Hughes Subdivision and the blocks in West Manchester Addition. The property to the northeast is evidently laid out in smaller blocks because of the presence nearby of two railroad lines which angle past it. The addition to the east conforms its blocks, from east to west, with those north of it, and also is bounded on the east and northeast by the railroads. The plat does not include lots and blocks on the south of the Hughes Subdivision, though a broken line indicates there may be streets platted south from Seventeenth at a distance from each other of about three hundred feet.

(a) It is obvious from this description and from the plat that there is no gross disparity in width between that part of the benefit district east of Ewing avenue and that part west of it. The difference is not at all comparable to that which existed in Commerce Trust Co. v. Blakely, 274 Mo. 1. c. 57. As was said in that case (l. c. 59) "A liberal view must be taken of inequalities resulting from the application of any rule of apportionment. Exact equality is humanly impossible." It was

held there, also, that when the foregoing had been given its proper weight ''a rule of apportionment cannot be upheld in a particular case like this if it results in gross inequality and arbitrarily distributes the burden without regard 'to special considerations applicable to the parcels taxed.' '' The disparity, merely, between the east and west parts of the district, does not bring this case within the influence of the rule quoted.

(b) It is argued that the ordinary block in Kansas City has an east and west length of 275 to 300 feet, and that this takes the parcel involved out of the meaning of the word ''block'' as used in the charter. There is no prescribed length and breadth of blocks in Kansas City. Doubtless the testimony that in many sections of the city, as a rule, blocks were of the width mentioned, is true. It appears not to be true in other sections. That fact is not so important, with respect to the question being considered, as is the length from east to west of blocks in the vicinage of the parcel assessed. We are not much concerned in this case with the width of the parcels or adjacent blocks from north to south, nor with the probable extension of streets from east to west. The benefit district extends fom Ewing avenue to the east and to the west. The blocks in the vicinity, except in so far as it may be seen from the plat the dimensions have been affected by the presence of two railroads on the east, are, in a majority of cases, of a length from east to west not greatly different from the east to west dimension of the parcel in question. If it is subsequently divided in accordance with what seems to be the vicinal scheme of improvement in the mind of a majority of adjacent owners who have platted their lands, the blocks will be of a length from east to west fairly in accord therewith if they extend across the parcel, and any other sort of division would be out of accord with such plan or system. In the Blakely case it was clear a development in accord with the plan employed by the adjacent owners would call for another street, parallel

to that being improved, through the tract there involved. The contrary is true in this case. There is not in this case, as in the Blakely case, a showing that another parallel street is now about to be opened under proceedings already commenced. Further, to open such a street, from south to north, through this property, would lead nowhere except through the property. There is no street platted immediately to the north of Hughes Subdivision between Ewing and Winchester avenues. To open another street from north to south through the center of this parcel would prevent its development in conformity to the plan already adopted by the owners of the older and more improved and settled addition adjoining it. The Blakely case is unlike this in this respect also. We do not think, in view of neighboring conditions, the assessment is to be condemned because the average block in many other parts of the city is materially narrower from east to west than the parcel in suit.

(c) It is also contended that the owner in making the plat of the subdivision did not intend it as a plat for urban purposes and that this is material to the question. The purpose of the owner would have relevance to the contention that since he had platted his property into lots and blocks, therefore he was in no position to deny it was so and must take whatever consequences might follow.

Is it true that where an owner has included in a subdivision two parcels which he has designated as "blocks" and which are of a width about equal to the other blocks in the platted territory of which his property comes to form a part and which when treated as blocks, as platted, are not subjected to materially greater assessments than most of the developed land about him, he can defend on the ground that in his designation of "blocks" he did not mean "city blocks"? The question is not so much when the property was platted, or what the owner intended at the time, as it is whether (the question of estoppel being laid aside) when the taxing au-

thorities take the platter at his word and treat the parcels as blocks, the resulting assessment is grossly unequal, arbitrary and disproportionate.  We do think the treating of blocks "4" and "5" as blocks within the charter rule of itself tends to show such a result has been reached.

III.   Respondents next argue the judgment is wrong because "the failure of the Board of Public Works to assess the cost of the work in accordance with the ordinance fixing the benefit district rendered the tax bill illegal and void."

By Ordinance 8374, approved May 24, 1911, the work of grading was authorized, and in that ordinance the council provided that the damages to the property affected should be levied according to the charter provision already quoted in substance.   The council further prescribed in that ordinance that the benefit district on the west side of Ewing avenue should run west to the middle of the blocks in West Manchester Addition and that on the east side of Ewing avenue the east line of the benefit district should be drawn 150 feet east of Ewing avenue and parallel thereto.   On June 5, 1911, the city counselor presented this ordinance to the municipal court, and the court ordered publication of notice of the passage and substance of the ordinance, including the benefit district as described therein, and notice that June 28, 1911, was fixed as the day for ascertaining and assessing damages and benefits.   Publication was made. August 4, 1911, the Board of Public Works presented and recommended for passage Ordinance No. 9643, which confirmed a contract for the work let to West on August 1, 1911, and provided that the cost of the work of grading should be paid by special assessments levied on land in a benefit district which is described in the language of the charter heretofore quoted. No particular land is mentioned.   The assessment roll

*Kansas City Charter: Grading Proceedings: Benefit Districts.*

was offered and it showed that on November 10, 1911, the city assessor was directed to assess the cost of the work. The directions to him were couched in the language of the charter and did not purport to describe particular parcels or lots. The assessor, upon this direction, made the assessment of which respondents complain.

It is contended the council in Ordinance 8374 fixed the benefit district; that this district included only the west one hundred and fifty feet of respondents' property, and that this rendered invalid the subsequent assessment under Ordinance 9643 of an additional part of that parcel not included in the 150 foot strip described in Ordinance 8374. Ordinance 8374 and Ordinance 9643 were passed for different purposes and were authorized by different charter provisions. The first was passed pursuant to Article 7, in order to authorize the grading and provide for the assessment of damages in favor of owners whose property was damaged by the grading and, also, in order to provide a fund to pay such damages, to assess benefits against property liable thereto. The charter provides (Sec. 2, Art. 8) that in an ordinance passed for this purpose "the ordinance . . . shall also prescribe and determine the limits within which private property is deemed benefited by the proposed grading or regrading." Ordinance 8374 prescribed such limits as already stated. The proceedings in court to assess damages were had under this ordinance and were brought to a finality there. The result does not appear in this record. Subsequently the contract for the work of grading was let, tentatively, and was confirmed by Ordinance 9643, which also provided, in accordance with Article 8 of the charter, that the cost of the work of grading should be paid by special tax bills issued against property in a benefit district. Article 8 does not direct the council to "prescribe and determine the limits of the benefit district" within which the lands are to be charged with the cost of the work of grading, as is the

case under Article 7 with respect to the district requir-
ed to bear the assessments to pay damages resulting
from the grading. The charter (Sec. 3, Art.8) specifi-
cally provides how the cost of grading work and the like
shall be apportioned and prescribes a formula, (already
set out), to be followed (with exceptions not pertinent
here) in determining the land or lots against which the
costs are to be charged and tax bills issued. The power or
direction given the council to fix the benefit district for
assessing benefits to pay damages in no way affects or
qualifies the charter direction in Article 8 defining the
lands which are to bear the costs of the work under the
contract. An error on the part of the council in per-
forming its duty, had one been made, could neither add
to nor substract from the present question, which is
whether the costs of the work were assessed according
to the directions in Article 8. Whatever assessment, if
any, was made against respondents in the proceedings
under Ordinance 8374 is independent of the assessment in
question in this case. The assessment for the cost of grad-
ing, represented by this tax bill, is not open to any
objection that the parcel was assessed too much or too
little in the condemnation proceeding. The notice requir-
ed in those proceedings is a notice of those proceedings.
Paragraph 11 of Secton 3 of Article 8 makes it clear that
the application of the charter rule for the assessment
of benefits for payment of the cost of the work shall be
applied and worked out in the particular case independ-
ently of action by the council. The council may, in its
discretion, provide by ordinance that the land shall be
charged no farther back than the alley and may, when
requested by the Board of Public Works, determine in
a particular instance, whether land fronting on a street
or avenue is "laid off into lots or blocks" within the
meaning of the charter rule of apportionment of cost of
work. These exceptions make clearer still the fact that
the application of the rule, in the first place, is left to
the Board in a case of such an apportionment. The char-

ter formula designates the benefit district and merely leaves it to the Board of Public Works, with exceptions noted, to apply that formula to the property affected, i. e. draw the line the formula describes. If the Board disregards the charter rule, that can be set up in defense to tax bills by those injured thereby. That, however, does not justify the conclusion that the Board should follow the rule only if the council followed it in the assessment of benefits to pay damages, in which assessment it is not provided in terms in the charter that the formula in paragraph 11 of Section 3 of Article 8 shall apply.

IV. The motion to dismiss for want of prosecution is brought here in an additional abstract. It purports to have been preserved in a term bill of exceptions, but no record entry shows such a bill was filed. Neither does it appear the motion and ruling thereon were incorporated in the final bill. This is sufficient to deprive us of power to affirm the judgment because of the ruling on the motion, even if there were no other reason why that ruling could not furnish a basis for such a course.

Motions: Term and Final Bills of Exception.

V. It is argued that the application in this case of the charter rule of assessment of benefits according to the value of the several parcels, considered without improvements, resulted in such a gross inequality as to render void the tax bill in suit.

The question whether respondents' land would be benefited was legislative in character (Prior v. Construction Co., 170 Mo. l. c. 451, and cases cited) and was determined by a competent agency. Numerous decisions in this State have recognized the validity of the method of distributing the costs of local improvements according to the value of the several lots or tracts affected. [Embree v. Road Dist., 257 Mo. l.

Cost of Grading: Apportionment According to Value.

c. 615; Aff'd, 240 U. S. 242; Meier v. St. Louis, 180 Mo. 1. c. 408; Egyptian Levee Co. v. Hardin, 27 Mo. 1. c. 496, et seq.; Barber Asphalt Pav. Co. v. French, 158 Mo. 1. c. 546, 547.] In these cases decisions of the Supreme Court of the United States are cited which show the method is held valid by that court. [Mattingly v. Dist., 97 U. S. 687; Webster v. Fargo, 181 U. S. 394; Houck v. Drainage Dist., 239 U. S. 254, affirming same case in, 248 Mo. 374; 25 R. C. L. p. 136, sec. 53.] The real contention, as stated by respondents, is that "the apportionment was made by the Board solely according to valuation and without any inquiry, finding or determination by them of the special benefits resulting to the several parcels of land from the improvement. They simply followed the charter which requires such apportionment. Our contention is that a local assessment, like that for the grading of a street, made solely according to such a rule, is not a valid assessment." It is argued the charter rule has no such relation to the benefits accruing that the resulting apportionment is in substantial accord with them. Any apportionment of the cost of work by a method other than that prescribed by the charter would have been void. [Fowler v. St. Joseph, 37 Mo. 228; Collier Est. v. Supply Co., 180 Mo. 1. c. 375.] Further, the city has power to prescribe by charter any method of apportionment which it deems equitable unless prohibited by the Constitution or some other restrictive and obligatory enactment. [Bauman v. Ross, 167 U. S. 548; St. Joseph v. O'Donoghue, 31 Mo. 346.] "It is safe to say that the doctrine is firmly established in this State that the Legislature, acting within its constitutional powers, may fix the territorial limits of special taxing districts, and also may fix the actual or maximum amount of special assessments, which it may place at a level rate, founded upon a unit of area or frontage, or at a rate founded upon a proceeding to ascertain the actual benefit accruing to each particular tract; or it may delegate any or all these powers to an

appropriate agency to be chosen or created by it. (Citing cases.) When all this has been done by valid legislation founded upon those principles of expediency to which we have referred, 'the owner of the property in the district cannot be heard to contend in the court that his property was not in fact benefited, or to the amount assessed in accordance with such apportionment.' [Meier v. St. Louis, 180 Mo. 391; Prior v. Construction Co., 170 Mo. 451.]'' [Houck v. Drainage Dist., 248 Mo. 1. c. 386.] In affirming the judgment in this case the Supreme Court of the United States (239 U. S. 1. c. 262), said: ''And with respect to districts thus formed . . . the Legislature may itself fix the basis of taxation or assessment, that is, it may define the apportionment of the burden, and its action cannot be assailed under the Fourteenth Amendment unless it is palpably arbitrary and a plain abuse.'' In the same case it was said that for the payment for local improvements from which special benefits ''may be deemed to result,'' special assessments may be made and ''the Federal Constitution does not require that for every payment there must be made an equal benefit. The State in its discretion may lay such assessments in proportion to position, frontage, area, market value, or to benefits estimated by commissioners. And, as we have already said, unless the exaction is a flagrant abuse and by reason of its arbitrary character is a mere confiscation of particular property, it cannot be maintained that the State has exceeded its taxing power.'' It is not contended in this case that the assessment was not made according to value. The fact that the application of the charter rule results in some irregularities was to be expected; but we do not think the mere fact that the land of respondents was, under the rule, assessed about twice as much as a neighboring parcel of about the same size is such conclusive proof of an abuse of the taxing power as to show confiscation and require an affirmance of the judgment regardless of the error first referred to. In any

event the existence of such an arbitrary exaction would be a question of fact which ought to be determined in the trial court on evidence and ought not to be found unless the evidence clearly brings it within the rule of the decisions quoted, and like decisions.

VI.    It is urged no jurisdiction was obtained to charge respondents' land because, it is insisted, the notice given under Section 5 of Article 7 of the Charter was not good.    This section applies to the proceedings for assessment of damages resulting to adjacent property from the grading and the assessment of benefits to pay such damages.    This section has nothing to do with the proceedings under Article 8 to assess benefits to pay the cost of the work of grading. Whatever relevancy the objections to the notice mentioned might have to a question of the jurisdiction of the court to assess benefits to pay damages, it has none with respect to the validity of the assessment, like that here, to pay for the cost of work.    No notice is required prior to such assessments by either the State or Federal Constitution.    [Naylor v. Harrisonville, 207 Mo. l. c. 353; Wagner v. Baltimore, 239 U. S. 219.]    The tax bills are collectible by suit and a hearing thus afforded.    The judgment is reversed and the cause remanded.    All concur.